PEOPLE v WOGAMAN

Docket No. 69031. Submitted March 9, 1984, at Lansing.—Decided
April 17, 1984.

Defendant, Ralph L. Wogaman, also known as Robert Zelacka,
was convicted by a jury in the Lenawee Circuit Court of
obtaining property by false pretenses. The trial court, Rex B.
Martin, J., sentenced defendant to ten months in jail. The
conviction arose out of an incident in which the defendant
removed a price tag from a $32.99 item in a store and placed it
on a $298.95 item. Store detectives observed the defendant's
actions, then watched him enter a check-out lane and buy the
$298.95 item at the $32.99 price. The check-out clerk was
informed by telephone by the store's manager, before the sale
was made, that defendant was suspected of having switched the
price tags and that she should ring up the sale as an ordinary
sale. Defendant appeals contending that the trial court erred in
denying his motion for a directed verdict of acquittal based on
the contention that an element of the crime, reliance by the
victim on the misrepresentation made by the defendant, had
not been proven. *Held:*

1. The purpose of the false pretenses statute is to protect the
unwary and negligent from the deceit of those who would take
advantage of another's negligence or incompetence. For this
reason the element of reliance by the victim is essential. Here,
such reliance was not shown.

2. The purpose of the false pretenses statute is to punish
cheats, but such cannot be accomplished when the victim has
knowledge that the cheat is about to take place.

3. Evidence of reliance was insufficient, as the cashier was
aware that a cheat was about to take place.

4. The proofs show, and the trier of fact necessarily found,

REFERENCES FOR POINTS IN HEADNOTES
[1] 32 Am Jur 2d, False Pretenses §§ 12, 32, 33, 51.
[2] 75 Am Jur 2d, Trial § 548 *et seq.*
[3-5] 32 Am Jur 2d, False Pretenses § 51 *et seq.*
[5] 32 Am Jur 2d, False Pretenses § 56.
Attempts to commit offenses of larceny by trick, confidence game,
false pretenses, and the like. 6 ALR3d 241.

that defendant was guilty of attempted false pretenses. His conviction is to be reduced to that offense.

Reversed.

1. FALSE PRETENSES — ACTIONS.

The elements of the crime of false pretenses are: (1) a false representation as to an existing fact, (2) knowledge by defendant of the falsity of the representation, (3) use of the false representation with an intent to deceive, and (4) detrimental reliance on the false representation by the victim (MCL 750.218; MSA 28.415).

2. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

When ruling on a motion for a directed verdict of acquittal, a trial court must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

3. FALSE PRETENSES — RELIANCE.

The purpose of the false pretenses statute is to protect the unwary and negligent from the deceit of those who would take advantage of another's negligence or incompetence; for this reason the element of reliance by the victim is essential (MCL 750.218; MSA 28.415).

4. FALSE PRETENSES — DEFENSES — KNOWLEDGE.

The purpose of the false pretenses statute is to punish cheats, but such cannot be accomplished when the victim has knowledge that the cheat is about to take place (MCL 750.218; MSA 28.415).

5. APPEAL — FALSE PRETENSES — ATTEMPTED FALSE PRETENSES.

The Court of Appeals may reverse a defendant's conviction of obtaining property by false pretenses and direct that the conviction be reduced to the offense of attempted false pretenses where evidence of reliance by the victim of the cheat was insufficient to support the conviction of obtaining property by false pretense but the proofs show, and the trier of fact necessarily found, that the defendant was guilty of attempted false pretenses (MCL 750.218; MSA 28.415).

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Nathan T. Fairchild*,

Prosecuting Attorney, and *Jann Ryan Baugh,* Assistant Attorney General, for the people.

*Stephen W. Oram,* for defendant on appeal.

Before: Cynar, P.J., and R. B. Burns and R L. Tahvonen,* JJ.

Per Curiam. Defendant was found guilty by a jury of obtaining property by false pretenses, MCL 750.218; MSA 28.415. He was sentenced to ten months in jail and appeals as of right.

At trial, Stephanie K. DePew, a Meijer Thrifty Acres store detective, testified that she observed defendant and two others remove the price tag from a Clean Welder, which retailed for $32.99, and place it over the price tag of a Poulan Chain saw, which normally retailed for $298.95. DePew waited until the three subjects left the area and, after summoning store detective Terry Baldwin, checked to ensure that the price tag had been removed from the welder and placed on the chain saw. She then marked the corner of the chain saw box with a small "x". DePew and Baldwin waited approximately 10 to 15 minutes, at which time defendant returned unaccompanied to the area. Both store detectives testified that they observed defendant take the chain saw off the shelf, check the price tag, place it in a shopping cart, and proceed to the front of the store. Defendant then entered a check-out lane and paid for the chain saw at the reduced price. He was subsequently apprehended by the two store detectives.

Jackie Hayati, a Meijer cashier, testified that while defendant was in line at her check-out lane she received a phone call from the store manager

* Circuit judge, sitting on the Court of Appeals by assignment.

telling her that defendant was suspected of switching price tags and instructing her to ring up the chain saw as an ordinary sale. Hayati also testified that she had no idea of the value of a chain saw and would not have questioned the $32.99 price tag had she not received the phone call.

Defendant testified that he was unaware that the price tags had been switched and had purchased the chain saw because it was such a good deal.

At the conclusion of the proofs defendant's counsel moved for a directed verdict, contending that one of the elements of the crime, reliance by the victim on the misrepresentation made by the defendant, had not been proven. The motion was denied.

The sole issue on appeal is whether a directed verdict of acquittal should have been granted to the defendant.

The elements of the crime of false pretenses are: (1) a false representation as to an existing fact, (2) knowledge by defendant of the falsity of the representation, (3) use of the false representation with an intent to deceive, and (4) detrimental reliance on the false representation by the victim. *People v Phebus,* 116 Mich App 416, 419; 323 NW2d 423 (1982). When ruling on a directed verdict motion, the trial court must consider the evidence presented prior to the motion in a light most favorable to the prosecution and must determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

The purpose of the false pretenses statute is to protect the unwary and negligent from the deceit of those who would take advantage of another's

negligence or incompetence. *People v Summers,* 115 Mich 537, 545; 73 NW 818 (1898). For this reason the element of reliance by the victim is essential. *People v Chappelle,* 114 Mich App 364; 319 NW2d 584 (1982). We agree with defendant that in this case reliance was not shown.

*People v Wilde,* 42 Mich App 514; 202 NW2d 542 (1972), involved a conspiracy between the defendants, operators of a repair shop, and an insurance adjustor. The adjustor, in exchange for a kickback, agreed to inflate the estimate for the repair of a vehicle damaged in an accident. The owner of the vehicle was informed of the plan and, being a field representative for the same insurance company, told his supervisor. The regional manager of the company then inspected the vehicle at its owner's home and prepared his own estimate, which was about one-third of the adjustor's estimate.

The insurance company paid on the inflated estimate, and then fired the crooked adjustor (the adjustor also pled guilty to the crime of false pretenses). The defendant repair shop owners were then tried and convicted of false pretenses. Finding the crucial element of reliance lacking, this Court reversed, stating:

"Pursuant to these authorities we have reviewed the record for evidence of reliance by AAA. AAA possessed both the repair estimate prepared by its regional manager approximating $200, and the inflated estimate of $622.33 prepared by their agent with defendants' assistance prior to defendants' beginning actual repairs. Since the $200 estimate was prepared pursuant to information supplied by a fellow employee that the repair estimates were fraudulent, AAA's knowledge that the pretense was false can neither be doubted nor denied. The subsequent payment of the fraudulent estimate cannot now be said to constitute reliance. Whether this payment was made to entrap their agent

and defendants or by mistake, we are bound by the elements of the offense. Admittedly, the purpose of the false pretense statute is to punish cheats, but such cannot be accomplished when the victim has knowledge that the cheat is about to take place." (Footnotes omitted.) *Wilde, supra,* pp 520-521.

The reasoning of the *Wilde* Court applies with equal force in this matter. The check-out clerk was informed, before the sale was made, that defendant was suspected of having switched the price tags.

Plaintiff refers to *Phebus, supra,* wherein we held that false pretenses, rather than larceny, was the appropriate charge to bring against a defendant accused of switching price tags. However, it is not clear whether the check-out person in the *Phebus* case had been alerted to the switch, and the element of reliance was not a contested issue there.

We note that in our case, as well as in *Phebus,* security personnel had observed the price tag manipulation prior to the sale. We express no opinion on whether the detective's knowledge may be imputed to the cashier for the purpose of negating reliance on the false representation, as the issue is not presented in this appeal. But, see *People v Schieda,* 99 Mich App 420; 297 NW2d 688 (1980). In our case evidence of reliance was insufficient, as cashier Hayati was aware that a cheat was about to take place.

The proofs do show, and the trier of fact necessarily found, that defendant was guilty of attempted false pretenses; we therefore direct that his conviction be reduced to that offense. See, *e.g., People v Saxton,* 118 Mich App 681, 691; 325 NW2d 795 (1982). Any question of resentencing is moot, defendant having already served his ten-month sentence.

Reversed.